**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

---

Mohammed A.,

Petitioner,

v.

Todd Blanche, *Acting Attorney General*; Markwayne Mullin, *Secretary, U.S. Department of Homeland Security*; David Venturella, *Director, Immigration & Customs Enforcement*; David Eastwood, *Acting Director, St. Paul Field Office Immigration & Customs Enforcement*; and Joel Brott, *Sheriff, Sherburne County*,

Respondents.

Civ. No. 26-3577 (JWB/LIB)

**ORDER ACCEPTING IN PART REPORT AND RECOMMENDATION OF MAGISTRATE JUDGE**

---

Mohammed A., pro se Petitioner.

David W. Fuller, Esq., Derek Ganzhorn, Esq., and Pedro Del Valle, IV, Esq., United States Attorney's Office, counsel for federal Respondents.

---

United States Magistrate Judge Leo I. Brisbois issued a Report and Recommendation ("R&R") in this matter on September 30, 2026. (Doc. No. 13.) The portions of the R&R to which Respondents object are reviewed de novo. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(3).

Respondents object to the R&R's interpretation of 8 U.S.C. § 1226(a) and 8 C.F.R. § 236.1(b) and its finding that a Form I-200 warrant is valid only if it is issued at the same time or after the issuance of a Notice to Appear. (Doc. No. 15.) Respondents concede, however, that an I-200 warrant "cannot be used to *arrest and take into custody*

an alien before the issuance of a Notice to Appear." (*Id.* at 2 (emphasis in original).) That concession narrows the dispute. Even assuming ICE could issue the warrant on May 6, 2026, the question is whether the Notice to Appear had issued by the time ICE used the warrant on May 8, 2026.

Under 8 C.F.R. § 236.1(b)(1), a Form I-200 generally authorizes a noncitizen to be arrested "[a]t the time of issuance of the notice to appear, or at any time thereafter." The regulation does not state that issuing an NTA after the arrest is sufficient, even if it is issued the same day. Every federal administrative agency, including ICE, "literally has no power to act—including under its regulations—unless and until Congress authorizes it to do so by statute." *FEC v. Cruz*, 596 U.S. 289, 301 (2022). A lawful warrant-based arrest thus stems from the authority Congress granted in § 1226 (allowing arrest on a warrant) and Respondents' own rule in § 236.1 (authorizing arrest on an I-200 at or after issuance of a Notice to Appear).

Here, the record shows that ICE arrested Petitioner on May 8, 2026, from the Dakota County Jail, transported him to the Whipple Federal Building for processing, and then transported him to Sherburne County Jail. (Doc. No. 7 ¶¶ 8, 10; Doc. No. 7-1 at 3.) Petitioner states under penalty of perjury that ICE took him into custody at the Dakota County Jail and that the notice was generated and served after he reached Fort Snelling. (Doc. No. 1 at 2, 4, 6.) Officer Sabin describes service of the warrant at the jail and transport to Whipple for processing before he describes issuance and service of the notice. (Doc. No. 7 ¶¶ 8–9.) The processing officer's report likewise records the pickup and transport before describing service of the notice. (Doc. No. 7-1 at 3–4.) There is no

affidavit from the issuing officer attesting to what time the NTA was issued. There is no time stamp on the document showing when it was signed. And the header indicating when it was later uploaded does not establish when it was issued. The document is dated May 8, 2026, and states that Petitioner was "currently residing at" Sherburne County Jail in Elk River, Minnesota. (Doc. No. 7-5 at 4.) That address is consistent with Petitioner's account, although it could also reflect his anticipated destination. Accordingly, the record shows by a preponderance that the NTA was issued after Petitioner was arrested, in violation of the applicable regulation.

Respondents relied on the May 6, 2026 warrant and expressly declined to defend the arrest under 8 U.S.C. § 1357(a)(2). (Doc. No. 6 at 3.) ICE had lodged a detainer two days prior to the arrest, and the jail notified ICE when Petitioner was ready for pickup. (Doc. No. 7 ¶¶ 7–8.) Nothing in the record suggests that Petitioner was likely to escape before ICE could obtain a valid warrant. Accordingly, Petitioner's arrest was unlawful.

The objection concerns the arrest. The recommended relief also requires consideration of the basis for Petitioner's present detention. An unlawful arrest does not entitle a petitioner to release if sufficient lawful grounds support his custody. *United States ex rel. Bilokumsky v. Tod*, 263 U.S. 149, 158 (1923). In their response to the petition, Respondents identified the June 12, 2026 bond decision as a reason Petitioner must remain in custody. (Doc. No. 6 at 2, 8.) Petitioner is a lawful permanent resident. After a June 9, 2026 hearing, the immigration judge found that Petitioner's theft convictions placed him within the mandatory detention provision of § 1226(c)(1)(B) and denied bond. Petitioner did not appeal. (Doc. No. 7-2 at 3–7; Doc. No. 1 at 2.)

Accepting the immigration judge's finding, § 1226(c) required ICE to take Petitioner into custody and foreclosed release on bond. ICE still had to carry out the arrest in the manner the law prescribes. As *Nielsen v. Preap*, 586 U.S. 392, 409–10 (2019), explains, § 1226(a) supplies the arrest authority, and § 1226(c) limits the discretion ICE may exercise under it. The June decision determined Petitioner's eligibility for bond while he was already in custody. It neither adjudicated the May 8 arrest nor directed that Petitioner be taken into custody under new process. On this record, Respondents identify no intervening order or other lawful process independently authorizing the custody that began on May 8, 2026. Petitioner is therefore entitled to release.

An additional restriction on re-detaining Petitioner is also warranted. Respondents maintain that § 1225(b)(2)(A) requires Petitioner's detention and that an Immigration Judge lacks authority to grant him bond. That position matters here because ICE has re-arrested successful habeas petitioners in this District as they were being released, in one instance within a minute. *Juan Y.P.M. v. Mullin*, Civ. No. 26-4662 (JRT/LIB), 2026 WL 3521183, at *3 & n.4 (D. Minn. Nov. 16, 2026). If that happens here, Petitioner will lose his liberty again before counsel can test whether ICE has corrected the defect in the October 16 arrest. A later ruling cannot restore that time.

Accordingly, the Petition for Writ of Habeas Corpus is granted in part, and Respondents are ordered to immediately release Petitioner, subject to the provisions below. Petitioner's other habeas claims are not reached, and this Order expresses no position on their merits.

## ORDER

Based on the files, records, and proceedings in this case, and for the reasons stated above, **IT IS HEREBY ORDERED** that:

1. The September 30, 2026 R&R (Doc. No. 13) is **ACCEPTED IN PART** and **MODIFIED** as set forth above. Respondents' objection (Doc. No. 15) is **OVERRULED** to the extent it seeks denial of the petition. The broader question whether the warrant could issue before the Notice to Appear is left open.

2. Petitioner Mohammed A.'s Petition for a Writ of Habeas Corpus (Doc. No. 1) is **GRANTED IN PART**.

3. Respondents must arrange for Petitioner's immediate release from custody. Respondents must provide Petitioner's counsel at least one-hour advance notice of the release time and location.

4. When Petitioner is released:

    a. **Release and Return of Property.** When Respondents release Petitioner, he must be released in Minnesota. At the time of Petitioner's release, Respondents shall return to Petitioner all personal property in Respondents' custody or control, including but not limited to, passports, identity papers or licenses, immigration records, prescribed medications, and treatment-related equipment. Release may not be delayed for any reason related to the retrieval, processing, or return of such property. Any delay or failure to effectuate release in accordance with this paragraph constitutes noncompliance with this Order.

    b. **Return to Minnesota.** If Petitioner is currently held outside Minnesota, Respondents shall initiate Petitioner's return to Minnesota for the sole purpose of effectuating release. Respondents shall not delay initiating Petitioner's return based on administrative convenience, transportation availability, or detention-capacity considerations.

    c. **Weather-Related Delay.** If weather conditions present a safety risk at

the time of release, Respondents may delay physical release only for the brief period necessary to ensure safe release. Any such delay must be strictly limited and may not be used to justify continued custody where a safe alternative is available.

d. **No Recharacterization of Custody.** Respondents shall release Petitioner without conditions. They may not require him to sign a release instrument or impose or reimpose conditions of supervision in carrying out this Order.

5. **Notice.** Within **48 hours** of entry of this Order, Respondents shall file a status update confirming the time, date, and location of Petitioner's release.

6. Detention was deemed insufficient because Petitioner's arrest occurred before issuance of the NTA. Before re-detaining Petitioner in the pending removal proceedings, Respondents must first obtain leave in this case. The motion must be served on Petitioner's counsel, identify the authority and facts supporting the proposed arrest, and explain how the proposed arrest complies with the requirements governing it. Respondents may request expedited consideration.

7. Petitioner's other claims are not reached.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Date: November 24, 2026
Time: 4:35 p.m.

*s/ Jerry W. Blackwell*
JERRY W. BLACKWELL
United States District Judge